UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  25-cv-80647-SMITH/REINHART

OLD JAMESTOWN STORAGE LLC,
and RIGSBY STORAGE LLC

Plaintiffs,

vs.

CAPITAL MAX GROUP, LLC, et al.,

Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS [ECF No. 13]

Old Jamestown Storage LLC and Rigsby Storage LLC invested $2.3 million with Capital Max Group in exchange for alleged assurances that Capital Max would secure financing for Plaintiffs to build their $30 million-dollar self-storage facility project. According to the Complaint, Justin Godur is Capital Max's managing member and authorized representative and Morris Godur also "exercised complete dominion and control over Capital Max." ECF No. 1 at ¶6. Capital Max was ultimately unable to secure financing so the parties entered into a repayment installment plan where Capital Max would pay back the $2.3 million plus interest. Plaintiffs say Defendants stopped making monthly payments, so the parties executed a promissory note. The debt remains unpaid. Plaintiffs now sue for fraud, securities fraud, and breach of contract. Count I alleges Defendants violated Section 10(b) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5. Count II alleges that Capital Max Group

breached its repayment contract with the Plaintiffs. Count III alleges fraud against all three Defendants.

Defendants move to dismiss all three counts for failure to state a claim. Defendants say the Complaint fails to meet the standard pleading requirements, the heightened pleading requirements for fraud, and the pleading requirements under the Private Securities Litigation Reform Act. Defendants also say that Plaintiffs failed to join a required party under Federal Rule of Civil Procedure 19(a). In the alternative, Defendants say Plaintiffs should be required to provide a more definite statement under Federal Rule of Civil Procedure 12(e). I have reviewed the Complaint, the Motion, the Response, and the Reply. For the following reasons, Defendants' Motion should be GRANTED IN PART and DENIED IN PART.

## I.       LEGAL PRINCIPLES

On a Rule 12(b)(6) motion to dismiss, the Court views the well-pled factual allegations in the light most favorable to the plaintiff. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). With limited exceptions, the Court looks only to the allegations in the complaint, any documents appended to the complaint or incorporated by reference into it, and any judicially-noticed facts. *Reed v. Royal Caribbean Cruises Ltd.*, No. 20-CV-24979-RAR, 2022 WL 3027906, at *6 (S.D. Fla. Aug. 1, 2022).

### A. Rule 8(a)

A pleading seeking relief in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this pleading requirement, a complaint must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N. A.*, 534 U. S. 506, 512 (2002). While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U. S. at 570). In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp.*,

605 F. 3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal,* 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557). When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U. S. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B. *Rule 9(b)*

In addition to pleading a plausible claim for relief under Rule 8, a plaintiff alleging fraud must state "with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). The Eleventh Circuit has interpreted this requirement to mean that the complaint must say (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the

fraud. *FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

### C. *PSLRA*

The Private Securities Litigation Reform Act ("PSLRA") imposes an even higher pleading requirement on securities fraud claims. *See generally Carvelli v. Ocwen Fin. Corp.,* 934 F.3d 1307, 1317–18 (11th Cir. 2019). It requires the plaintiff to set forth with particularity "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Further, the plaintiff must allege "with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [*i.e.*, scienter]." 15 U.S.C. § 78u–4(b)(2)(A).

The required state of mind is an "intent to defraud or severe recklessness on the part of the defendant." *FindWhat*, 658 F.3d at 1299 (quoting *Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 594 F.3d 783, 790 (11th Cir. 2010)). A "strong inference" is one that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). "[T]he complaint must allege facts supporting a strong inference of scienter 'for each defendant with respect to each violation.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1238 (11th Cir. 2008) (citing *Phillips v. Scientific– Atlanta, Inc.*, 374 F.3d 1015, 1016 (11th Cir. 2004)). "Severe recklessness is limited

to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1282 n.18 (11th Cir. 1999) (quotation marks omitted).

In *Mizzaro,* the Eleventh Circuit gave further guidance on evaluating whether a "strong inference" of scienter exists:

> Because the strong-inference inquiry asks "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard," "courts must consider the complaint in its entirety," and "omissions and ambiguities count against inferring scienter." *Tellabs,* 551 U.S. at 2509, 2511. Moreover, the inquiry is "inherently comparative" because courts "must take into account plausible opposing inferences." *Id.* at 2510, 2509. *Tellabs* explained how to balance opposing inferences this way:
>
> > To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the "smoking-gun" genre, or even the "most plausible of competing inferences." ... Yet the inference of scienter must be more than merely "reasonable" or "permissible"—it must be cogent and compelling, thus strong in light of other explanations.
>
> *Id.* at 2510. "In sum, the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 2511.

[This test] asks what a reasonable person *would* think, not what a reasonable person *could* think.

*Mizzaro*, 544 F.3d at 1238–39 (emphasis in original).

In sum, to survive a motion to dismiss in a securities fraud case, the plaintiff "must (in addition to pleading all of the other elements of a § 10(b) claim) plead 'with particularity facts giving rise to a strong inference' that the defendants either intended to defraud investors or were severely reckless when they made the allegedly materially false or incomplete statements." *Mizzaro,* 544 F.3d at 1238. "If these PSLRA pleading requirements are not satisfied, the court 'shall' dismiss the complaint." *FindWhat*, 658 F.3d at 1296-97 (citing 15 U.S.C. § 78u–4(b)(3)(A)).

A securities fraud plaintiff can rely on confidential sources, with the Court assessing the weight to be given to the evidence derived from those sources:

> We conclude that the weight to be afforded to allegations based on statements proffered by a confidential source depends on the particularity of the allegations made in each case, and confidentiality is one factor that courts may consider. Confidentiality, however, should not eviscerate the weight given if the complaint otherwise fully describes the foundation or basis of the confidential witness's knowledge, including the position(s) held, the proximity to the offending conduct, and the relevant time frame.

*Mizzaro,* 544 F.3d at 1240.

A securities fraud claim can be based on a failure to comply with generally accepted accounting principles ("GAAP") if coupled with other evidence of intent. But, a mere GAAP violation standing alone is not sufficient:

> Without any additional evidence of scienter, a defendant's failure to follow GAAP or publication of inaccurate accounting figures, is insufficient to state a claim for securities fraud. *See In re Comshare,* 183

F.3d at 553; *In re SCB Computer Technology,* 149 F.Supp.2d 334, 346 (W.D.Tenn.2001). Violations of GAAP without more, may establish negligence, but can never establish scienter. *Reiger,* 117 F.Supp.2d at 1010. "[V]iolations of GAAP...provide evidence of scienter only when accompanied by *additional* facts and circumstances that raise an inference of fraudulent intent." *Id. See also Cheney v. Cyberguard Corp.,* 2000 WL 1140306, \*11 (S.D.Fla.2000); *Malin v. Ivax Corp.,* 17 F.Supp.2d 1345, 1360 (S.D.Fla.1998) (allegations of defendants' motive and opportunity coupled with GAAP violations are insufficient to plead scienter under the PSLRA) . . . As Plaintiffs' point out, in some cases, courts have allowed circumstances surrounding GAAP violations to contribute to a strong inference of scienter. *See In re MicroStrategy, Inc. Sec. Litig.,* 115 F.Supp.2d 620 (E.D.Va.2000)("The mere *fact* that there was a restatement or a violation of GAAP, by itself, cannot give rise to a strong inference of scienter; the *nature* of such a restatement or violation, however, may ultimately do so . . . when the number, size, timing, nature, frequency, and context of the misapplication or restatement are taken into account."); *In re Adaptive Broadband Sec. Litig.,* 2002 WL 989478, 2002 U.S. Dist. LEXIS 5887 (N.D.Cal.2002)(corroborating GAAP violations with detailed evidence of the contemporaneous decision making behind the accounting errors showing that statements were known to be false at the time they were made to the SEC and the investing public set forth sufficient evidence of scienter) . . .

In cases in which courts throughout the nation have allowed circumstances surrounding GAAP violations to contribute to a strong inference of scienter sufficient to withstand a motion to dismiss, several factors are often present. *In re SCB Computer Technology,* 149 F.Supp.2d 334 (W.D.Tenn.2001). First, the cases contain allegations of insider trading. *Id.* at 350–51. Second, the magnitude of the improperly recognized revenues is great. *Id* at 351. Third, the GAAP violations relate to major balance sheet items based on contracts of tremendous magnitude and financial importance to the corporation. *Id.* Fourth, the contracts are contingent upon some future occurrence or consignment transactions in which the other party has no obligation to pay the corporation the amount recorded as revenue. *Id.* at 352. Fifth, the GAAP violation violates the corporation's internal policies. *Id.*

*In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1165–67 (S.D. Fla. 2004) (brackets in original). "In certain circumstances, courts have held that allegations of violations of GAAP . . . coupled with allegations of ignoring 'red flags,' can be sufficient to state a claim of securities fraud." *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1209–10 (11th Cir. 2001) (citations omitted).

An inference of scienter can arise from stock sales by insiders if those transactions are suspicious or unusual. *Edward J. Goodman Life Income Trust*, 594 F.3d at 793 (citations omitted); *In re AFC Enterprises, Inc. Sec. Litig.,* 348 F. Supp. 2d 1363, 1373 (N.D. Ga. 2004). Insider sales are suspicious if "the level of trading is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Id.* (citations omitted). "A stock sale may be deemed unusual when it is made at a time or in an amount that suggests that the seller is maximizing personal benefit from inside information." *In re AFC Enterprises, Inc. Sec. Litig.,* 348 F. Supp. 2d at 1373.

Statements of opinion generally cannot be the basis for a securities fraud claim because "liability attaches only in the case of an 'untrue statement of a material *fact*.'" *Carvelli,* 934 F.3d at 1326-27 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,* 575 U.S. 175, 183 (2015) (quoting 15 U.S.C. § 77k(a)))). There are two exceptions to this general rule. First, "a statement of opinion that 'falsely describe[s] [the speaker's] own state of mind' is an untrue statement of fact—as to what the speaker actually believes." *Carvelli,* 934 F.3d at 1322 (citing *Omnicare,* 575 U.S. at 184) (brackets in original). Second, "when statements of opinion 'contain

9

embedded statements of fact,' a speaker may be liable 'if the supporting fact she supplied were untrue.'" *Carvelli,* 934 F.3d at 1322 (citing *Omnicare,* 575 U.S. at 185-86).

    *D. Joinder of indispensable party.*

        "Necessary parties" are those persons who the Court determines must be joined in the action if feasible, whereas "indispensable parties" are those necessary persons whose joinder is not feasible and in whose absence the action cannot proceed. Fed. R. Civ. P. 19; *BFI Waste Sys. of N. Am., Inc. v. Broward Cnty.*, Fla., 209 F.R.D. 509 (S.D. Fla. 2002). Federal Rule of Civil Procedure 19 delineates a two-step inquiry: (1) a court must first determine whether a person absent from the litigation ought to be joined "if feasible"; and (2) if a court determines that a person ought to be joined but joinder is not feasible—*e.g.,* because of limitations on service of process, subject matter jurisdiction or venue—the court must then determine whether "in equity and good conscience" the action may proceed in the person's absence, taking into consideration various factors. *See* Fed. R. Civ. P. 19 advisory committee's note; *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.,* 669 F.2d 667, 669 (11th Cir.1982) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 (1968)). *Challenge Homes,* 669 F.2d at 669, n. 3; 4 James W. Moore, *Moore's Federal Practice* § 19.02[2][c] (3d ed.2002). In making these determinations, of primary importance are the practical effects of the person's absence on the interests of the parties, the absent person, and the litigation. *See Challenge Homes,* 669 F.2d at 669; *Ship Construction & Funding Services (USA), Inc., v. Star Cruises PLC,* 174

F.Supp.2d 1320, 1325 (S.D.Fla.2001) (citing *Challenge Homes*). The burden is on the moving party to establish that a person is necessary or indispensable. *See Star Cruises,* 174 F.Supp.2d at 1325.

## II.    FACTS[1]

Old Jamestown Storage, LLC is a company formed to build a self-storage facility in North Carolina. ¶ 12. Rigsby Storage, LLC raised funds for the acquisition. *Id.* In search of construction financing for the project, Plaintiffs were introduced to Morris Godur and, his son, Justin Godur. "[Morris] Godur and Justin Godur presented themselves as the principles of Capital Max, a lending advisory firm." ¶ 13, 14.

Morris Godur and Justin Godur "promised they could secure institutional financing through a European fund that would cover 90-95% of the project's estimated $30 million cost." ¶ 15. Plaintiffs "transferred approximately $2.3 million" to the Defendants "[t]rusting these claims and after conducting what appeared to be proper due diligence, including a site visit and face-to-face meetings." ¶ 16. The funds were meant as a down payment and a "lock" on the interest rate for the expected loan. *Id.*

"All contracts were signed directly with Capital Max." ¶ 17. "It was not until after the funds were transferred that Justin Godur revealed there was no loan agreement in place, and no legitimate lender had committed to the project." *Id.*

---

[1] Unless otherwise noted, citations to paragraphs ("¶")reference the Complaint at ECF No. 1.

"Despite this, Justin Godur [] assured Plaintiffs that he would seek alternative funding sources while continuing to control the $2.3 million." ¶ 18. But, ultimately, Justin Godur "failed to provide any real loan documents or reliable term sheets over several months." *Id.*

Plaintiffs ended the agreement and demanded the return of the $2.3 million. Defendants refused to return the full amount citing "expenses" and offered a repayment plan. ¶ 19. The parties entered into an installment repayment plan where Defendants would pay Plaintiffs $100,000 a month. *Id.* After paying $400,000, Defendants stopped making monthly payments. ¶ 21. So, the parties executed a promissory note. ¶ 24. The note required Capital Max to repay Old Jamestown a principal amount of $1,114,000, plus interest, through monthly payments of $29,141.78 for 53 months at an annual interest rate of 8.75%. *Id.* "Despite these terms, the debt remains unpaid, and significant arrears have accumulated." *Id.*

Throughout this process, Plaintiffs plead, "Defendants knowingly misrepresented their ability to secure financing and used false pretenses to persuade Plaintiffs to transfer the funds." ¶25. "Their actions have caused considerable harm to Plaintiffs, delayed the project's development, and shaken investor confidence." *Id.* Plaintiffs say they "reasonably and detrimentally relied on Defendants' representations in deciding to enter into the agreements." ¶14.

## III.   DISCUSSION

### A. *The fraud claim (Count III) should be dismissed.*

The elements of common law fraud, as alleged in Count III, are (1) a false statement concerning a material fact, (2) knowledge by the person making the statement that the representation is false, (3) intent by the person making the statement that the representation will induce another to act on it, and (4) reliance on the representation to the injury of another party. *Nyesa Costa Rica v. Wilson Cap. Grp. Holdings, LLC,* No. 11-22036, 2012 WL 1492344 (S.D. Fla. Apr. 27, 2012) (quoting *Lance v. Wade*, 457 So.2d 1008, 1011 (Fla.1984)).

The facts alleged in the Complaint fail to plausibly allege fraud. Many do not rise above the level of "labels and conclusions" or a formulaic recitation of the elements of a cause of action. Others are naked assertions devoid of further factual enhancement which are not entitled to the assumption of truth. Plaintiffs fail to point to sufficient facts that plausibly allege with particularity, the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). For example, Plaintiffs plead that Defendants have fraudulently deceived them out of $1.9 million dollars (plus interest). In support they say, Morris Godur and Justin Godur "promised they could secure institutional financing through a European fund that would cover 90-95% of the project's estimated $30 million cost." But, Plaintiffs fail to allege precisely what statements or omissions were made in which documents or oral representations and the time and place of each such statement. *FindWhat*, 658 F.3d at 1296. Likewise, Plaintiffs Complaint fails to precisely allege the content of any such statement and

13

the way in which the Defendants allegedly misled the Plaintiffs. *Id*. Accordingly, the fraud claim should be dismissed.

### B. *The securities fraud claim (Count I) should be dismissed.*

The elements of securities fraud are (1) a material misrepresentation or omission, (2) made with scienter, (3) a connection with the purchase or sale of a security, (4) reliance on the misstatement or omission, (5) economic loss, and (6) a causal connection between the misrepresentation or omission and the loss, called loss causation. *Carvelli,* 934 F.3d at 1317.

Plaintiffs' Complaint fails to point to facts that sufficiently plead the heightened pleading requirement under the PSLRA. Plaintiffs fail to plead with particularity "each alleged misleading statement, the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). Likewise, upon review, the Complaint does not include particularized facts that "give rise to a strong inference that the [D]efendants acted with [scienter]" let alone which if any statements are attributable to which if any of the Defendants. 15 U.S.C. § 78u–4(b)(2)(A). Under the PSLRA, I am required to consider "the complaint in its entirety" and "omissions and ambiguities count against inferring scienter." *Tellabs,* 551 U.S. at 2509, 2511. Here, there are no specific statements or omissions sufficiently alleged. Instead, Plaintiffs plead "both [Morris] and Justin Godur promised they could secure institutional financing through a European fund that would cover 90%–95% of the projects estimated $30 million cost" and that "both [Morris] and Justin Godur presented themselves as the principles of Capital Max, a lending advisor firm." The PSLRA

14

requires more. For example, it is unclear which part of the statement is attributable to which Defendant, how that statement was misleading, or the reasons why Plaintiffs believed it to be misleading, Likewise the Complaint fails to point to facts that sufficiently state with particularity how the Defendants acted with scienter in making this statement. The Complaint is ambiguous, so it is equally probable that the Defendants thought in good faith that they could raise the money but failed, nonetheless. *See Tellabs*, 551 U.S. at 2509, 2511 ("omissions and ambiguities count against inferring scienter."). Similarly, Plaintiffs do not sufficiently plead how Morris and Justin Godur "presented themselves as the principles of Capital Max." Accordingly, Plaintiff's securities fraud claim should be dismissed.

   *C. The breach of contract claim (Count II) should remain.*

   The Complaint says Defendant Capital Max "seeks dismissal of Counts I, II, and III." ECF No. 13 at 2. But, Defendants' Motion does not discuss *why* Count II should be dismissed. *United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n. 13 (11th Cir. 2007) (arguments not fully developed are forfeited); *See also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

   In any event, Count II plausibly alleges a breach of contract.

   The elements of a breach of contract are (1) a valid contract, (2) material breach, and (3) damages. *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256 (11th Cir. 2009). Here, Plaintiffs say (1) they entered into an agreement and executed promissory note with Capital Max where Capital Max would repay the $2.3 Million dollars and (2) Capital Max failed pay. A breach of contract claim does not need to be pled with

particularity. Rather, a breach of contract claim only needs to comply with Rule 8. *Pals Group, Inc. v. Quiskeya Trading Corp.,* Case No. 16-23905, 2017 WL 3840359, at *3 (S.D. Fla. Sept. 1, 2017) (citing *Manicini Enterprises, Inc. v. American Exp. Co.,* 236 F.R.D. 695, 698 (S.D. Fla. 2006)). At this stage, viewed in the light most favorable to the Plaintiffs, they have plausibly plead their breach of contract claim. Defendants' Motion should be denied as to Count II.

*D. Defendants' request for joinder of indispensable party should be denied.*

With the breach of contract claim remaining, I turn to Defendants' argument that the Complaint fails to join an indispensable party. Defendants say Plaintiffs failed to join an indispensable party— Military and Patriots Investment Group, LLC ("MPIG"). In support, the Defendants say MPIG (through its agent, Wesley Yates) contracted with the Godurs and Capital Max not the Plaintiffs. Defendants have appended Retainer and Consultation Agreements between Capital Max and MPIG where Capital Max agreed to consult for MPIG. ECF No. 13-1. Defendants also appended Old Jamestown's Limited Liability Company Annual Report, MPIG's Franchise Tax Account Status Report, and Old Jamestown's Franchise Tax Account Status. ECF Nos. 13-2–13-4. MPIG is listed a member in Old Jamestown's Franchise Tax Account Status Report and Old Jamestown is listed as a member in MPIG's Tax Account Status Report. ECF Nos. 13-2–13-3.

Plaintiffs do not dispute that MPIG entered into the retainer agreements or MPIG's role as a member of Old Jamestown. Instead, they say the alleged breach was *not* of the retainer agreement, but of the Promissory Note and Repayment Agreement.

16

In support, Plaintiffs say that they "are the current holders of the rights and obligations created by the operative agreements including the Promissory Note and Repayment Agreement, both of which post-date the original retainer." ECF No. 14 at 9. And, according to the Promissory Note and Repayment Agreement, Plaintiffs say, Defendants' obligations are expressly owed to the Plaintiffs not MPIG. *Id.* Therefore, Plaintiffs conclude that "MPIG's absence does not impair the Court's ability to grant full relief to the parties actually before it." At this stage, for purposes of the breach of contract claim, I agree.

True, that Plaintiffs have not appended the Promissory Note and Repayment Agreement to their Complaint. But, at this stage, in federal court, they are not required to. *TaiDoc Technology Corp. v. Pharma Supply, Inc.*, Case No. 13-80682, 2013 WL 12383787, at *2 (S.D. Fla. Aug. 29, 2013) ("The Federal Rules of Civil Procedure do not require the attachment of the contract sued upon."); *Green v. Dr. Kelly Malinoski, LLC*, No. 219CV556FTM60NPM, 2019 WL 6173175 (M.D. Fla. Nov. 20, 2019). Plaintiffs' Complaint pleads "Plaintiffs Old Jamestown and Rigsby [Storage] LLC entered into a binding written Repayment Agreement with Capital Max" and "Capital Max executed a Promissory Note in favor of Old Jamestown" ECF No. 1 at ¶¶ 40, 42. Therefore, Defendants have not met their burden of showing MPIG is an indispensable party. *Star Cruises,* 174 F.Supp.2d at 1325. Accordingly, Defendants Motion to Dismiss for failure to join an indispensable party should be denied.

*E. Defendants' Request for a More Definite Statement should be denied.*

Defendants request a more definite statement as alternative relief to their Motion to Dismiss. That request should be denied as moot as to the securities fraud (Count I) and fraud (Count III) claims.

Defendants' request for a more definite statement as to the breach of contract (Count II) claim should also be denied. Plaintiffs allege Defendants owe them $2.3 million dollars under an identified promissory note and further allege that Defendants have not paid them back. The breach of contract claim is not "so vague or ambiguous that the opposing party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.,* 872 F. Supp. 2d 1353, 1358 (S.D. Fla. 2012).

*F. Plaintiffs' request for leave to amend is not properly before the Court.*

In their response, Plaintiffs seek leave to amend should the Court find the Complaint to be inadequately pled. ECF No. 14 at 12–13. That request is not properly before me. *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1222 (11th Cir. 1999) (When a party seeks relief imbedded in a response or reply, as here, "the issue has not been raised properly."). If, however, the Plaintiffs believe they could amend the complaint to include factual allegations to overcome the shortcomings of their Complaint, they should file a separate motion for leave to amend and should include the proposed amended Complaint. S.D. Fla. L.R. 15.1; Fed. R. Civ. P. 15(a)(2); *Patel v. Georgia Dep't BHDD*, 485 F. App'x 982, 983 (11th Cir. 2012).

Upon review of the record however, it appears that leave to amend the securities fraud claim may be futile. To state a claim for securities fraud under Rule 10b-5, a plaintiff must allege the following elements: (1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the misrepresentation or omission and the loss, called loss causation. *Carvelli,* 934 F.3d at 1317 (citing Securities Exchange Act of 1934 § 10, 15 U.S.C.A. § 78j(b); 17 C.F.R. § 240.10b-5(b)). Here, the Complaint fails to point to facts that sufficiently show how any of the alleged misconduct was "in connection with the purchase or sale of a security." *Id.* At a high level, Plaintiffs' Complaint is about a business deal gone wrong. Plaintiffs say they gave the Defendants money to secure financing and Defendants failed to meet their end of the bargain. But, if that business deal never had a "connection with the purchase or sale of a security" leave to amend the securities fraud claim would be futile.

Should Plaintiffs abandon the securities fraud claim, this Court may not have subject matter jurisdiction because the current Complaint does not properly allege diversity of citizenship. Jurisdiction under 28 U.S.C. §1332 depends on the parties' citizenship. A limited liability company's citizenship for purposes of diversity jurisdiction is the citizenship of each of its members. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.,* 374 F.3d 1020, 1022 (11th Cir. 2004). Here, Plaintiffs' Complaint alleges where each LLC is "established" but fails to allege the citizenship of each member of the LLCs. Similarly, the Complaint alleges Justin and Morris

Godur "resid[e] in the State of Florida" but it is not enough to plead where a party resides or is located — Plaintiffs must allege diversity of *citizenship*. *Travaglio v. Am. Exp. Co.,* 735 F.3d 1266, 1269 (11th Cir. 2013).

## REPORT AND RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court GRANT Defendants' Motion to Dismiss IN PART and DENY the Motion IN PART. Counts I and III should be dismissed and Count II should remain.

## <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Rodney Smith, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 15th day of December 2025.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE